*443
 
 Ruffin, C. J.
 

 The court is of opinion, that the disco lution of the injuction was properly refused. The equity of the plaintiff is founded on the assignment of the judgment and payment by him im conformity thereto. Those facts are admitted in the answer. But it seeks to avoid their effect, by sotting up a distinct equity of this defendant against the other defendants upon certain transactions between them, not apparent upon the assignment. If,the matter of evidence be well founded in law, yet the injunction must stand, until the truth of the facts be established on the hearing. For this reason alone the motion to dissolve might have been properly overruled.
 
 Lindsay
 
 v
 
 Etheridge,
 
 1 Dev. & Bat. Eq. 36. But even if the answer be received as true throughout, there was no error in the order, as it seems to us. Ontland has much cause of complaint against the other defendants, and has, doubtless, a redress against them. Still, it might be questioned, whether he could treat his assignment as null as against them, while he continued to hold the slave, for which the judgment was in part the consideration.
 

 But, without considering that point, he misconceived his rights, we think, in assuming, as against the present plaintiff, to be the absolute owner of the judgment after having assigned it, and complicating the plaintiff with the other defendants, so as, in effect, to render him responsible for their acts or oh their promises. By the assignment the plaintiff at law bacame a trustee for the -assignee. But he was not an ordinary trustee, for the assignee was-not only the real owner of the debt, but also had an authority to receive payment. The assignor is a trustee in the sense that he is the legal owner, and that the assignee shall have the right to use his name to enforce payment, but not in the sense of its being his duty or his right to receive the money and account for it to the assignee as
 
 cestui que trust.
 
 By tolerating the assignment of a judgment and obliging the debtor to pay the assignee, as the creditor, equity must needs protect the debtor in making the payment. It is true, the debtor is not charged with knowledge of the assignment of a demand that is not negotiable, and, therefore, he may rightfully pay.
 
 *444
 
 his original creditor, until he knows that another person has become his creditor. It is obvious, that good faith to the debtor, and ordinary diligence in attending to his own secu-nty, forbid the assignee from trusting to rumor or other indirect method for conveying to the debtor information of the assignment, and require him to give, as from himself, direct and precise notice of the assignment, and that the payment must be made to him. After such notice, the debtor is to look to the assignee as his creditor, to whom the lav/ expects and encourages him to make payment. By a parity of reasoning the assignor, if he claim any interest in the judgment against his assignment] must give' to the debtor a notice as distinct and particular. It cannot be sufficient in such cases, that something reached the debtor’s ears, which might have put him on enquiry, according to the rule respecting a purchaser from one affected by a trust. In that case
 
 caveat emptor
 
 is the rule; as he ought not to lay out his money, where there is a ground to doubt the title, and he may secure himself by covenants. But a debtor may be compelled to pay, and therefore may voluntarily pay, his creditor, until plainly informed that the debt belongs to another. If in any case the assignor can annul the operation of his assignment, as an authority to the debtor to pay the debt to the assignee — a point not now necessary to decide — yet we think, that it can only be upon distinct personal notice from the assignor to the debtor, that the former looks to the latter for the money. It is bad faith towards the .debtor to leave him in doubt to whom he is to make payment. Even payment to an ordinary attorney is good, until certain information of the revocation of the authority be communicated to the debtor by the principal of the attorney. Much more must that hold, when the power to receive is in the form of an assignment., and is apparently irrevocable. For the want of such a notice to the presént plaintiff by or from Outland, we .think he cannot impeach the payment made by the plaintiff, but must look to the other party, to whom the plaintiff paid the money. It is true, as was said at the bar, the plaintiff might have made payment to the sheriff, and left the other parties
 
 *445
 
 to contend'for the money. But we do not think that varies the rule, which is applicable alike to the assignment of all securities that are not negotiable. The question is, who is , . ? . , the owner m equity, for in every case, we suppose, a debtor may pay the creditor without compulsion by suit or execution, whether the debt be due on note, bond, or judgment.
 

 The court is likewise of opinion, that the plaintiff lost none of his rights by taking an indemnity from'Sanders Futrell for making payment to him. It was but a reasonable precaution against possible loss by a defect in the assignment, or by the expenses of litigation, in which he might be involved in the premises. The plaintiff has none of the funds of Futrell in his hands, out of which Outland can ask to be satisfied, but only a covenant of indemnity against the consequences of paying his own money to the assignee of the judgment. This suit is, therefore, the plaintiff’s.own, and for his benefit^solely, and it in no wise effects Outland’s claim or redress against both or either bf-the Futrellsin another proceeding. For these reasons, our opinion is, that there is no error in the interlocutory order, which must be certified accordingly to the Court of Equity.
 

 The defendant Outland must pay the plaintiff’s costs in this Court.
 

 Pisja Curiam. - Ordered accordingly.